Antonio R. Barceló et al., Petitioners, v. Eduardo J. Saldaña, Executive Secretary of Puerto Rico, Respondent.[*]

No. 271. Argued April 2, 1931.—Decided May 20, 1931.

_____

[*] Note.—On appeal to the U. S. Circuit Court of Appeals for the First Circuit, this decision was affirmed. See 54 Fed. (2d) 852.

220

*Antonio R. Barceló, M. A. Martínez Dávila, Miguel Guerra Mondragón, Cayetano Coll y Cuchí, Luis Llorens Torres, E. Ramos*

*Antonini,* and *Angel Arroyo Rivera* for petitioners. *James R. Beverley, Attorney General,* and *T. Torres Pérez* for respondent. *J. Valldejuli Rodríguez,* as *amicus curiae.*

Mr. Chief Justice Del Toro delivered the opinion of the Court.

On February 18, 1931, Antonio R. Barceló and Miguel Martorell, alleging that they were the nominees of the Union Party of Puerto Rico, respectively, for the office of Resident Commissioner to the United States, and as a Member of the Board of Review and Equalization of Puerto Rico, and that Eduardo J. Saldaña, Executive Secretary of Puerto Rico, had refused to register and record their nominations in the books of his office in order to certify and transmit the same at the proper time to the Insular Board of Elections of Puerto Rico, to be printed on the official ballot that should be used in the general election of 1932, petitioned this Supreme Court for a writ of mandamus to compel the said Eduardo J. Saldaña, Executive Secretary of Puerto Rico, to so register their names, claiming that what had been requested of him constituted the fulfillment on his part of a ministerial duty resulting from his office or employment.

After considering the petition a rule was issued directed to the Executive Secretary commanding him to appear before the Court on February 26, 1931, and show cause, if any he had, why the writ of mandamus sought should not be allowed.

On the day set the Secretary appeared and presented his written answer in opposition to the issuance of the writ. The petitioners also appeared. The Puerto Rican Alliance Party, composed of the Union Party of Puerto Rico and the Puerto Rican Republican Party, represented by its President, Rafael Cuevas Zequeira, asked leave to intervene in the proceeding as an interested party. This was opposed by the petitioners and, in view of the special law on the matter, the Court denied the intervention, but permitted the Alliance to appear as *amicus curiae.* Oral arguments were made by the

attorneys for the petitioners, for the Executive Secretary, and for the Alliance Party. The petitioners and the respondent introduced their evidence and on the following day, February 27, 1928, the hearing was concluded. Both the petitioners and the respondent amended their pleadings, the petition and the answer, substituting these amended pleadings for those originally filed. Instead of further oral argument it was agreed that the parties and the *amicus curiae* should file briefs, which they did, the case being finally submitted to the Court on April 2, 1931.

In our opinion the petition for mandamus should be denied. We will set forth our reasons therefor. The conclusions of fact are based on the pleadings and the evidence. The law governing the case is brief and simple. The applicable jurisprudence would be susceptible of a much broader study than is allowed by the time at our disposal. However, we shall refer to the fundamental decisions in point.

In the year 1924 there existed in Puerto Rico as principal political parties, duly organized, the Union Party of Puerto Rico and the Puerto Rican Republican Party. Both held conventions for considering a certain movement of approximation initiated by their leaders. The convention of the former was held in San Germán and that of the latter in Mayagüez. As a result, a coalition was agreed upon under the name of Puerto Rican Alliance on the following bases:

". . . (b) The Puerto Rican Alliance shall assume and exercise all the powers and prerogatives appertaining to the two historical parties of Puerto Rico called the Union Party of Puerto Rico and the Puerto Rican Republican Party.

"(c) The Puerto Rican Alliance shall direct all its efforts to the consecration of full self-government in order to attain the sovereignty of the people of Puerto Rico within the sovereignty of the United States. . ."

In pursuance of that agreement, the central directive committee of the Alliance was organized composed of fifteen permanent members and fifteen alternates, seven permanent

members and seven alternates, being designated by the convention of the Union Party of Puerto Rico from a list of twenty-one names furnished by the convention of the Puerto Rican Republican Party and another seven permanent members and seven alternates being designated by the convention of the Puerto Rican Republican Party from a list of twenty-one names furnished by the convention of the Union Party of Puerto Rico, the remaining permanent member and alternate member to be chosen by a unanimous vote of the fourteen permanent members so designated.

The organization of the local committees was agreed upon in a similar manner: They should consist of seven members, three of whom should be Unionists, three Republicans and the seventh to be designated by the Central Directive Committee. It was expressly agreed that "The Directive Committee shall choose the members of the local committees of the Coalition from among the persons who in the respective municipal districts form the local board of the said party, if persons friendly to the coalition can be found; otherwise the selection may be made, in whole or in part, outside the local boards. The members of each party in the said committees shall assume the functions corresponding to the party which they represent for the purposes of the electoral and municipal laws."

The members of the Directive Committee of the Alliance designated unanimously by the convention of the Union Party of Puerto Rico were Antonio R. Barceló, Jesús Benítez, Alfonso Lastra Charriez, Arturo González Prado, Arsenio Martínez, Miguel Guerra-Mondragón and Nicolás Santini, permanent members; Juan Hernández López, José Castillo, Emilio González, José F. Aponte, Genaro Cautiño, Adriano González and Carlos Brunet del Valle, alternates.

The minutes of the special General Convention of the Union Party of Puerto Rico held in San Germán on the 4th and 5th of May, 1924, conclude as follows:

"On the proposal of Mr. Barceló, it was agreed to send a fraternal greeting to the members of the republican convention assembled at Mayagüez and to their illustrious President as well as to the veteran advisers of the Union, Messrs. Francisco de Paula Acuña, Eduardo Giorgetti, and Cayetano Coll y Toste. Likewise, on motion of Mr. Barceló, it was agreed to record a vote of thanks for the Resident Commissioner of Puerto Rico in Washington, Mr. Córdova Dávila, for his patriotic labors in behalf of Puerto Rico.

"Messrs. Rafael Cuevas Zequeira and Juan Hernández López delivered eloquent addresses praising the patriotism shown by the conventions of the two historical parties composing the Puerto Rican Alliance, and the session was closed by Mr. Barceló with the same words uttered in Ponce by the late patriot Román Baldorioty de Castro in the celebrated convention at which the Puerto Rican Autonomist party was organized: 'Glory to God in the highest and peace on earth to men of good will.'

"And the convention was adjourned."

With these words the separate convention of the Union Party of Puerto Rico was closed, according to the official book containing a record of the proceedings introduced in evidence by the petitioners. They appear on page 126 of that book. The next entry, beginning on page 127, was dated five years later, on August 2, 1929.

Then, the coalition having been formed, the Central Directive Committee began to act at once and, the local committees having been organized, the life of the new political organization so formed was developed through them.

In the same year of 1924, a general election was held in Puerto Rico and the Puerto Rican Alliance went to the polls, the parties forming it preserving their personality and each nominating its candidates, who appeared on the official ballot under the name and emblem of each party. The candidates were the same and those under the Union emblem received 132,755 votes while those under the Republican emblem received 30,286. Also, in the general election of 1924, the Socialist Party cast 56,103 votes and the Historical Constitutional Party cast 34,576 votes. Only 1,041 more voters took part in the election, representing other political organizations.

The final result of the election of 1924 was, therefore, a complete majority which gave to the Union and Republican parties combined as the Alliance absolute control of the Senate and of the House for a period of four years. It does not fully appear from the record how the Alliance developed and acted during that period. The book which should attest its official acts is not before us. The Alliance is not a party to this proceeding. It does appear from the record that after the Legislature had been organized with the Alliance in full control it passed an, act which was approved on May 7, 1927, amending the Election and Registration Law, sections 40 and 42 thereof reading as follows:

"Section 40.—No person shall be a candidate for more than one office, nor for the same office on two or more different tickets. If he has been nominated for two or more offices on one or more tickets or for the same office on two or .more tickets, he must select the office and ticket on which he prefers his name to appear as a. candidate. In the event of a candidate failing to make such selection prior to twelve o'clock noon on September 30th, his name shall be certified on the ticket and for the office for which he was first nominated. Should it be impossible to determine the office or ticket for which he was first chosen, then his name shall be certified for the office or tickets first named in the petition of certificate nominating him."

"Section 42.—The name and emblem used to distinguish each of the principal or organized political parties on the election ballot, shall be the same that were used by each such party in the preceding election, unless a change in such name or emblem shall be certified to the Executive Secretary of Porto Rico on or before the 20th day of September of the year of the election in which it is to be used.

"No political party shall adopt as a name or emblem a name or emblem which has been previously used or adopted by another political party, either in whole or in part, if such other party still claims and uses such name and emblem, nor shall any political party use as an emblem on an election ballot the flag or coat of arms of the United States or of Porto Rico, and the Executive Secretary of Porto Rico is hereby authorized and directed to refuse to accept any name or emblem of a political party which shall be offered for registration or record in his office which violates the provisions of

this Section. If any political party fails to duly register an emblem with the Executive Secretary of Porto Rico on or before the 20th day of September of the year of the election in which the same is to be used as required by this Act, the Executive Secretary shall designate an emblem for such party which shall be used to distinguish the said party on the official ballot.

"Any principal or organized political party desiring to change its name or emblem may do so on certificate of the central directing body of said party, filed in the office of the Executive Secretary, and such party shall not therefor lose the rights and privileges granted thereto by law as such principal or organized party; *Provided,* That such parties as at the previous election went to the polls as an alliance or coalition and registered separate tickets in which the same candidates either totally or in part appeared for the same offices, may file in the office of the Executive Secretary of Porto Rico on petition of the central directing organization of said alliance or coalition, a general name and an insigne for said alliance or coalition containing the insigne of each of the allied or coalition parties, and underneath it one sole ticket shall be registered under the prescriptions of section 40 of the Election and Registration Law as hereby amended; *Provided, further,* That any alliance or coalition, going to the polls under one name or insigne as determined in the foregoing proviso, shall be considered as one single party with the same prerogatives, rights, and duties as under the law pertained to the parties composing it, and hereafter it shall be considered as a principal or organized party according to the number of votes obtained thereby at the election, as herein provided.

"On or before the 20th day of September of a year in which an election is to be held, each candidate for Senator-at-large or Representative-at-large may file with the Executive Secretary of Porto Rico a simple and distinguishable emblem to be placed by the side of his name on the election ballot. No candidate-at-large shall use any emblem which is the same or similar to an emblem which has been previously adopted and registered and the right to the use of which is still claimed by another candidate or a political party. No candidate shall use the flag or coat of arms of the United States or of Porto Rico as an emblem. Priority in the order of presentation of emblems shall be determined by the dates when they are presented to the Executive Secretary of Porto Rico for such purpose. If two or more emblems equal or similar, in whole, or in part, are presented to him at the same time, the Executive Secretary shall

decide by lot or drawing to which priority belongs. The said lot or drawing shall be made in the presence of the persons or parties affected or interested, or of their representatives, who must reside in San Juan. The said representatives shall be designated by the said interested persons or parties in all cases where such persons or parties do not file their emblems personally.

"On the 26th day of September of the year in which an election is to be held the Executive Secretary shall send to the Insular Board of Elections a certified statement of the emblems of all political parties and candidates-at-large, to be printed on the election ballots of that year, and the said certificate shall be accompanied by drawings made *ad hoc* in cases of emblems different from those used in the preceding election."

After the amendment had gone into effect, the Directive Committee of the Puerto Rican Alliance adopted the following resolution:

"WHEREAS: By virtue of identical resolutions approved by the general conventions of the Union Party of Puerto Rico and the Puerto Rican Republican Party held in San Germán and Mayagüez respectively on the 5th and 6th, and on the 3rd, 4th and 5th days of May, 1924, the said parties formed a political alliance or coalition under the name of Puerto Rican Alliance;

"WHEREAS: In accordance also with the resolutions approved by the said conventions the Puerto Rican Alliance would assume and exercise all the powers and prerogatives pertaining to the two historical parties of Puerto Rico called Union Party of Puerto Rico and Puerto Rican Republican Party;

"WHEREAS: The Directive Committee of the Puerto Rican Alliance was authorized to determine the manner of carrying to the electoral ticket its candidates, it being understood that the allied parties would preserve their respective personalities, names, and emblems;

"WHEREAS: Section 42 of the Election and Registration Law, as amended by the Act of May 7, 1927, provides that—

"'Any principal or organized political party desiring to change its name or emblem may do so on certificate of the central directing body of said party, filed in the office of the Executive Secretary, and such party shall not therefore lose the rights and privileges granted thereto by law as such principal or organized

party; *Provided,* That such parties as at the previous election went to the polls as an alliance or coalition and registered separate tickets in which the same candidates either totally or in part appeared for the same offices, may file in the office of the Executive Secretary of Porto Rico on petition of the central directing organization of said alliance or coalition, a general name and an insigne for said alliance or coalition containing the insigne of each of the allied or coalition parties, and underneath it one sole ticket shall be registered under the prescriptions of section 40 of the Election and Registration Law as hereby amended; *Provided, further,* That any alliance or coalition, going to the polls under one name or insigne as determined in the foregoing proviso, shall be considered as one single party with the same prerogatives, rights and duties as under the law pertained to the parties composing it, and hereafter it shall be considered as a principal or organized party according to the number of votes obtained thereby at the election, as herein provided.'

"WHEREAS: The Union Party of Puerto Rico and the Puerto Rican Republican Party went as allies to the polls in the election of 1924, each party registering its candidates separately, but with the same candidates for all of the offices voted for in the said election;

"WHEREAS: It is advisable that each party should register in the office of the Executive Secretary of Puerto Rico the said *Alliance* with the name already adopted for it, that is, Puerto Rican Alliance, so that it may appear in the electoral ticket as a political party and all its candidates may be registered under the emblem or insignia of said Puerto Rican Alliance in compliance with the provisions of section 40 of the Election and Registration Law, the Puerto Rican Alliance assuming all of the rights, privileges, and prerogatives granted by law to the said allied parties, 'Union Party of Puerto Rico' and 'Puerto Rican Republican Party';

"WHEREAS: It is pertinent to adopt as the emblem or device of the Puerto Rican Alliance the one already chosen by the Directive Committee and registered in the office of the Executive Secretary of Puerto Rico, to wit:

" 'An evenly balanced pair of scales bearing the name 'Alianza Puertorriqueña' and embodying also the names of the two historical parties: 'Unión de Puerto Rico' and 'Republicano Puertorriqueño,' with their respective insignia: the two hands and the eagle,'

"Now THEREFORE, *Be it resolved by the Directive Committee of the Puerto Rican Alliance:*

"1. To request the Executive Secretary of Puerto Rico to register the coalition or conjunction of the Union Party of Puerto Rico and the Puerto Rican Republican Party under the common name of the Puerto Rican Alliance which assumes all of the rights, privileges, and prerogatives corresponding by law to the said parties for the purpose of registering under the said emblem of the Puerto Rican Alliance on the electoral ticket to be voted at the next general election the candidates selected by the Puerto Rican Alliance in accordance with its regulations and with the provisions of the Election and Registration Law for all offices to be filled by the said election.

"2. To register in the office of the Executive Secretary of Puerto Rico as the insigne or emblem of the Puerto Rican Alliance the following:

" 'An evenly balanced pair of scales bearing the name 'Alianza Puertorriqueña' and embodying also the names of the two historical parties: 'Unión de Puerto Rico' and 'Republicano Puertorriqueño,' with their respective insignia: the two hands and the eagle.'

"3. That this resolution be communicated to the Governor of Puerto Rico, to the Executive Secretary, to the Insular Board of Elections, to the local committees of the Puerto Rican Alliance, and to the public in general."

This resolution was ratified at a convention of the Alliance held in the Municipal Theatre of San Juan on August 26, 1928, as follows:

"B.—To ratify the resolution of the Directive Committee of the Puerto Rican Alliance of March 13, 1928, communicated to the Executive Secretary of Puerto Rico, and by virtue thereof the Puerto Rican Alliance will go to the polls under a single ticket and insigne already adopted and registered with the official name of the Puerto Rican Alliance of the Union Party of Puerto Rico and the Puerto Rican Republican Party, the historical names of the two allied parties together with their symbols, personalities, rights, and prerogatives thus remaining as the patrimony of The Alliance.

"That the Directive Committee of the Puerto Rican Alliance, at its meeting of August 28, 1928, resolved to use as the abbreviated name of its collectivity that of Puerto Rican Alliance and under that abbreviated name shall file in the office of the Executive Secretary of Puerto Rico all of the certificates of conventions."

The ratification was also communicated officially to the Executive Secretary of Puerto Rico by the secretary of the Directive Committee of the Puerto Rican Alliance.

On the 4th of the following month of September there were transmitted to the Executive Secretary of Puerto Rico some one hundred and twenty-five "certificates of convention," about eighty-two being signed by Antonio R. Barceló, president, and Frank A. Martínez, secretary, and about forty-three by Félix Córdova Dávila, president, and Frank A. Martínez, secretary. We will transcribe the pertinent part of one of those signed by Félix Córdova Dávila, as president, and of one of those signed by Antonio R. Barceló also as president:

"ALIANZA PUERTORRIQUEÑA
"Box 84
"San Juan, P. R.

"CERTIFICATE OF CONVENTION

"The undersigned, President and Secretary of the Convention held by the Puerto Rican Alliance Party in San Juan, Puerto Rico,

"Do HEREBY CERTIFY: That the members of the said convention having assembled on call for the purpose of nominating candidates of the Puerto Rican Alliance for the offices of Resident Commissioner to the United States, senators and representatives at large and members of the Board of Review and Equalization who shall appear on the ticket in the next November election, a vote was taken among those present and the result showed that the following gentlemen were nominated:

"For Resident Commissioner to the United States: Félix Córdova Dávila.

"For Senators at large: Antonio R. Barceló, Juan Hernández López, Juan B. Soto.

"       .     .     .     .     .     .     '     .

"And for transmission to the Executive Secretary of Puerto Rico in compliance with section 36 of the Electoral Law in force we sign these presents at San Juan, Puerto Rico, this 28th day of August, 1928.

"Félix Córdova Dávila, President.—Frank A. Martínez, Secretary."

## PUERTO RICAN ALLIANCE
"CERTIFICATE OF CONVENTION

"The undersigned, President and Secretary of the Convention held by the Puerto Rican Alliance Party in the municipality of Ponce,

"Do HEREBY CERTIFY: That at a called meeting of the electors (*compromisarios*) of this municipality for the purpose of nominating the candidates of the Puerto Rican Alliance for the office of Mayor and Municipal Assemblymen who should appear on the ticket in the next November election, a vote was taken among those present with the result that the following gentlemen were nominated.

"For Mayor, Guillermo Vivas Valdivieso.

".    .    .    .    .    .    .    .

And for transmission to the Executive Secretary of Puerto Rico in compliance with section 36 of the Electoral Law in force we sign these presents at San Juan, P. R., this 31st day of August, 1928.

"Antonio R. Barceló, President.—Frank A. Martínez, Secretary."

The other certificates are practically the same.

There were sent also to the Executive Secretary by the Puerto Rican Alliance with the said certificates certain documents relative to some substitutions. We will transcribe one of them. It reads:

"Yauco, P. R., September ____, 1926.
"Hon. Executive Secretary of Puerto Rico.
"Sir:

"I wish to state hereby that I accept my nomination to substitute Mr. Pedro Olivari as member of the Municipal Assembly made by the Puerto Rican Alliance Party.

"Respectfully, Pedro M. Franceschi."

With these documents as a basis and with those necessarily contributed by the other parties of the Island, the form of the general official ballot was prepared for the election of 1928. It contains only three columns.

In the first and under the official emblem of the Alliance appear the names of the candidates of the "Puerto Rican Alliance of the Union Party of Puerto Rico and the Puerto Rican Republican Party." In the second, under the insignia

of the arm supporting the torch and of the elephant, appear the names of the candidates of the Constitutional Socialist Party. The third column contains no device and is used for the names of "Independent Candidates."

After the election had been held in November of the year 1928 and the votes had been canvassed, it was found that 132,826 voters marked their ballots in the column of the "Puerto Rican Alliance of the Union Party of Puerto Rico and the Puerto Rican Republican Party," it being impossible to distinguish their origin. They voted in a single column, under a single name and a single emblem formed, it is true, of attributes of old emblems, but embodied in another new one consisting of a balance which generally symbolizes the idea of justice. In the column of the Constitutional Socialist Party 123,415 votes were cast, and in the third column only ninety-four persons voted.

And thus, in our opinion, as expressed on June 25, 1928, in construing the same law applicable to the present case in *Martínez* v. *Saldaña,* 38 P.R.R. 398, was consecrated the creation of a new party or political entity which by reason of the number of its votes continued displaying the position not only of principal party but of the party of the majority in Puerto Rico.

It is evident that disagreements arose within the Alliance after the election of 1928. The petitioners have presented no clear evidence as to the origin of these disagreements. Although they introduced the minute books to which we have referred, they offered specifically only three of them in evidence—that of the San German Convention of 1924, that of the old Central Board of the Unionist Party of 1929, and that of the convention of the so-called Unionist Party of August 24–26, 1929. The minute book of the first meeting of the "Unionist members of the Directorate of the Alliance" was omitted. However, notwithstanding this and the fact that the proceeding herein is one in which, with the exception of the documents already in the possession of the Executive Secre-

tary, all of the new evidence introduced has been under the absolute control of the party applying for the remedy, there is sufficient in the record to justify the conclusion that the said disagreements came into existence after the election of 1928 and did not arise among the groups of diverse origin as such groups, but among the leaders of the two parties al-ready interlaced and fused into the body of the collectivity. Some of them proposed that the conflict should be submitted to the consideration and decision of a convention of the Al-liance as it was constituted. Mr. Barceló objected and con-tended that a convention of each party should be called for the purpose of outlining the course to be followed in the fu-ture. There was no agreement. And it appears from the minute book offered in evidence that a meeting was called of the ''Central Board of the Union Party of Puerto Rico (which remained in recess upon the establishment of the Al-liance or pact with the Puerto Rican Republican Party at the San Germán convention of May 4, 1924) together with the Unionist members of the Directorate.''

We have a desire to transcribe in full the minutes of the proceedings, but it would give to this opinion extraordinary length. José L. Berríos, a member of the old Central Board, read the following:

''Distinguished fellow-citizens: It is a great honor for me to be here and I want to tell you quite candidly that I am not a Unionist except within the Puerto Rican Alliance. After having kept silent during the so-called Truce of God and during the last convention held before the election wherein the fusion of the two branches of the Alliance was tacitly (and I believe expressly also) effected, it would be very painful for me to retrace the steps already taken along a road full of bitterness and sacrifices, on account of personal considerations where a great amount of pride prevails. I wonder what sensible and patriotic men would think of us if we disbanded under these circumstances which are full of great moment for Puerto Rico, when a solution must be found to the most complicated problems with which we are confronted, to clear the path for our adversaries and our enemies, tireless watchers of our blunders and eager to take

advantage of them in order to greatly injure our highest ideals. I think that in a caucus of members of the Alliance, some from your side as Unionists and other distinguished fellow-partisans from the Republican ranks, acting all calmly, without prejudice, remembering that we are all Puerto Ricans and that now more than ever, because we had never suffered so many vicissitudes as at the present time, Puerto Rico needs the intelligent, active and thoughtful cooperation of her best citizens in order to find a remedy for the many ills which affect us by making a small sacrifice of our conceit and of that which we call pride, a satisfactory solution might well be reached with no vanquished on either side, the only victor being the Island which is expectantly watching our dissensions.

"Please pardon these humble suggestions and may God enlighten you."

President Barceló "states that the question raised by Mr. Berríos is not in order. 'We have met here,' he says, 'we are going to deliberate, we are going to adopt some resolutions, either for or against the whole proposition of Mr. Berríos.' "

Immediately Mr. Barceló took the floor and held it for two hours. Other persons took part in the discussion and a motion was made and approved by a majority vote "calling a great convention of the Union Party of Puerto Rico." Messrs. Benítez Castaño and José L. Berríos objected and presented to the secretary for incorporation in the minutes the following explanation of their negative votes:

"WHEREAS, after carefully considering the questions raised before the persons who composed the Central Board of the Puerto Rico Union at the time of organizing the Puerto Rican Alliance, as to whether or not there should be called a convention of the Union Party of Puerto Rico to decide as to its future status;

"WHEREAS, as a moral result of the propaganda that has been carried on the coalition is practically made and we are bound to be consistent with the principles which we have been upholding;

"WHEREAS, legally, after the resolution adopted in the convention of the Alliance of 1928 (subdivision B of Article IX of its program) the two historical parties renounced from that moment in favor of the Alliance to become part of its patrimony their historical names as well as their emblems, personality, rights, and prerogatives;

"Now, THEREFORE, Be it resolved by those present that in their opinion the so-called Central Board has no longer authority to take part in the matters under discussion and which pertain solely and exclusively to the Alliance."

Messrs. Arsenio Martínez, Genaro Cautiño, and Leopoldo Figueroa stated that they subscribed to the explanation of the foregoing negative vote.

The general convention was convoked, by summoning, as is said, the members of the Central Board and local committees who had been chosen in 1922 for a period of four years and who were, as contended by the petitioners, in recess since the pact of 1924, and was held in the Municipal Theatre of San Juan on August 24–26, 1929. The proceedings appear on pages 140 to 189 of the minute book. A resolution offered by President Barceló was approved, and its paragraphs 1, 7, and 9 read as follows:

"FIRST:—To terminate the political coalition, and the same is hereby declared to be so terminated and at an end, effected between the Union Party of Puerto Rico and the Puerto Rican Republican Party by resolutions of the general conventions respectively held in San Germán and Mayagüez, on May 4, 1924.

"SEVENTH:—To empower and direct the Central Board of the Puerto Rico Union, and the same is hereby so empowered and directed, to certify this resolution to the Executive Secretary of Puerto Rico for the purpose of complying with the requirements of the Election Law, the Union Party of Puerto Rico preserving the status of principal and independent party which it holds at present.

"NINTH:—The Union of Puerto Rico finally declares that every Unionist, whether a member of the Directorate or of any local committee, or of the Alliance, or any other Unionist who, either with or without representation, attends the proposed convention of the Alliance shall do so in his private capacity but not as a Unionist; therefore, any resolution that may be adopted in said convention shall have neither authority nor legal or moral effect for the purpose of even being taken into account by the Union of Puerto Rico."

Later another special general convention was called and held at which the petitioners were nominated as candidates. The nominations were communicated to the Executive Sec-

retary and he requested a legal opinion from the Attorney General. Following it, he refused to register the candidates for the fundamental reason that the Union Party of Puerto Rico did not exist as an independent entity by virtue of its fusion with the Puerto Rican Republican Party in order to form the Puerto Rican Alliance Party, as we have stated.

To complete this recital of the facts in relation to the attitude assumed by the Executive Secretary, it should be stated that the Puerto Rican Alliance communicated to the said Secretary the following resolutions adopted at a regular general convention held in Mayagüez on August 31 and September 1, 1929. They read as follows:

"I, Juan Valldejuli Rodríguez, Secretary of the General Convention of the Puerto Rican Alliance held in the City of Mayagüez on the 31st of August and 1st of September, 1929, do hereby certify that Hon. Rafael Cuevas Zequeira was designated by said convention as President of the Puerto Rican Alliance Party.

"I further certify that at the aforesaid General Convention the following persons were designated as Honorary Presidents of the Puerto Rican Alliance:

"1.—Eduardo Giorgetti,

"2.—Félix Córdova Dávila,

"3.—José Tous Soto,

"4.—Mrs. Milagros Benet de Mewton.

"I further certify as Secretary of the Insular Committee of the Puerto Rican Alliance that the Committee met, having been previously called by President Cuevas Zequeira, on September 5, 1929, in the Capital of Puerto Rico, and proceeded to elect as vice-presidents of the Puerto Rican Alliance, Genaro Cautiño and Francisco Parra Capó."

"I, Juan Valldejuli Rodríguez, Secretary . . ., do hereby certify:

"That the following resolution was approved by the said general convention:

"BE IT RESOLVED by the General Convention of the Puerto Rican Alliance composed of the Union Party of Puerto Rico and the Puerto Rican Republican Party:

"1.—To confirm once more the agreements and resolutions which brought into life the Puerto Rican Alliance ratified by the acts of the General Convention of 1928, said Alliance having been recognized

and confirmed as a single party by law and by the express will of the electors of the Puerto Rican Alliance in the last election of 1928;

"2.—That the Puerto Rican Alliance, in its internal functions, shall not recognize any other bodies than those by it authorized and created, to the resolutions and regulations of which all Alliancists owe respect and obedience.

"I further certify that at the aforesaid convention of the Puerto Rican Alliance held in the city of Mayagüez on the 31st of August and the 1st of September, 1929, the following resolution was approved:

"BE IT RESOLVED by the General Convention of the Puerto Rican Alliance composed of the Union Party of Puerto Rico and the Puerto Rican Republican Party:

"1.—That the Central Committee of that collectivity called 'Directorate of the Puerto Rican Alliance' be known henceforth as the 'Insular Committee of the Puerto Rican Alliance.'

"2.—That this Committee thus designated shall be the successor of the old 'Directorate of the Puerto Rican Alliance' and is authorized to exercise all of the powers of said Directorate in the manner prescribed by the rules of the collectivity.

"I further certify as Secretary of the Insular Committee of the Puerto Rican Alliance:

"That the Insular Committee of the Puerto Rican Alliance met in the Capitol of Puerto Rico on September 5, 1929, having been previously called by the president of the collectivity, Rafael Cuevas Zequeira, there being present 34 members and alternates of the said body, constituting a quorum, at which meeting the following resolution was adopted:

"That the Executive Secretary of Puerto Rico be notified that the Alliance of the Union Party of Puerto Rico and the Puerto Rican Republican Party, at its sovereign convention held on the 31st of August and 1st of September, 1929, in the City of Mayagüez, resolved to reaffirm the alliance of the Union Party of Puerto Rico and the Puerto Rican Republican Party for the purposes of paragraph 2 of section 42 of Act No. 1 to amend sections 40 and 42 of the Election and Registration Law of June 25, 1919, as amended and known, according to its own provisions, as the 'Election and Registration Law' of May 7, 1927, and that the said Executive Secretary be notified also that in conformity with the said resolution the Alliance of the Union Party of Puerto Rico and the Puerto Rican Republican Party still claims for itself and is using its emblem and name of

Alliance of the Union Party of Puerto Rico and the Puerto Rican Republican Party with which it went to the polls at the last general election and as they appear registered in the office of the Executive Secretary of Puerto Rico.''

The Executive Secretary received also a communication from M. Díaz García, as President of the Puerto Rican Alliance, opposing the registration in the office of the Secretary of the name ''Union of Puerto Rico'' because he considered it prejudicial to the interests of the Alliance which had the exclusive right to such name.

How is it possible, in the light of these facts and the law, to arrive at any other conclusion than that reached by the Attorney General of Puerto Rico in the opinion rendered by him at the request of the Executive Secretary, advising the latter to refuse the registration sought by the petitioners?

The petitioners contend in their brief that the following questions should be considered:

''1.—That a political party, as any other association not for pecuniary profit, is a voluntary association of citizens with the right to vote, recognized as a juridical entity with sufficient personality to prove its legal existence and to make rules for its own protection while it subsists and is not voluntarily dissolved; but different in its internal organization from a corporation or partnership.

''2.—On account of their juridical nature, two political parties may form a partnership, alliance or coalition between themselves; but can never consolidate or merge into a single one without a previous voluntary dissolution.

''3.—Any partnership of associations formed for an indefinite period may be dissolved at the will of any of the constituent members of the partnership, alliance or coalition at any time, provided the other partner or association is given notice of the dissolution of the social agreement or contract.

''4.—The last proviso of section 42 of the Election Law, as amended by Act No. 1 of May 7, 1927, is grammatically susceptible of being construed in accordance with the spirit of the American Constitution and our Organic Act.

''5.—If the aforesaid section 42, viewed in connection with section 40 of the Election Law as amended in 1927, could not be construed

in conformity with our theory, any other construction would be unconstitutional on the four grounds alleged in paragraph 8th of our petition for mandamus.

"6.—If the parties constituting the said alliance were not consolidated and the alliance was dissolved by the will of one of the two parties forming the association or coalition, such parties regained their personality, name, and insigne and must be restored to their former status; and to that end the Executive Secretary should assign to the Union Party of Puerto Rico the number of votes to which it might be entitled from those cast in the last election of 1928, following any rule which in his opinion might be the most reasonable, just, and equitable.

"7.—As this is not a case of two factions or insurgent movements within the same party whose differences could be settled by a central committee, but of two independent parties each claiming the same name, insigne or the prerogative of a principal party, one of them having been organized 27 years ago and the other in the month of September, 1929, the remedy of mandamus lies to compel the Executive Secretary to register the ticket of the party with the right to use the name and insignia of the Union Party."

Then follows an argument on these questions revealing great mental effort, much legal learning and skill, and extraordinary ability, but it is shattered on the rock of consummate facts, of the applicable law, and of the inevitable consequences of the acts themselves.

The pact of 1924 was valid in accordance with the law and the precedents. The directive bodies of the political parties had authority to act as they did. After the coalition was achieved the electorate followed the leaders and the Alliance was represented in the Legislature by a majority which gave it full control. Why was it necessary to change the law if it was desired to preserve the coalition and at the same time the separate personality of the parties of which it was composed? The reasons for the change adduced by the petitioners do not resist the test of calm reasoning. The wording and purpose of the law as amended are clear. Sections 40 and 42 and sections 14 and 36, which were not amended, are closely interlaced. They are *in pari materia*.

Section 40 prescribed that no person should be a candidate for the same office on two or more different tickets, and section 42 provided that such parties as at the previous election went to the polls as an alliance or coalition and registered separate tickets in which the same candidates either totally or in part appeared for the same offices, may file in the office of the Executive Secretary of Puerto Rico, on the petition of the central directing organization of said alliance or coalition, a general name and an insigne for said alliance or coalition containing the insigne of each of the allied or associated parties, registering underneath it one single ticket; and it further provided that any alliance or coalition thus going to the polls should be considered *as one single party* with the same prerogatives, rights, and duties as under the law pertained to the parties composing it, and should be considered as a principal or organized party according to the number of votes obtained by it at the election.

It has been argued extensively by the petitioners in the sense that the verb "consider" used by the Legislature in section 42 can not have the effect of "converting" into a single party the allied parties which may resort to its provisions. It has been argued also by the Attorney General that it does have such effect. In our opinion the intention of the Legislature is evident and the wording of the law expresses what the lawmakers meant to say. "Until now the reference was to allied or associated parties. Hereafter, if these parties adopt a general name and register under it a single ticket and so go to the polls, they shall be considered as a single party, that is, shall be held as, shall constitute, shall become converted into, a single party, with the rights and duties of the parties composing the alliance or coalition." If we examine, for instance, section 14 of the Election Law, we will find that since 1919 the Legislature used the same verb and form —and again used them in amending the section in 1924—in defining what are the organized parties in Puerto Rico. And thus it said in 1919: "Any political organization which

has cast twenty per cent of the total vote of the Island for Commissioner to Washington at the previous election, shall be considered as a duly organized party. . . .'' And in 1924 it said: ''And any political party which has acquired the standing of 'principal party,' or 'organized party' shall be considered and treated as such. . . .'' It is very clear that what that means is that such parties become so by being so considered. The legislators recognize that they have that condition; that they are such organized parties.

Section 36 prescribes the manner in which *political parties,* and only political parties, shall hold their conventions and certify the names of their candidates to the Executive Secretary.

It has been insisted that no period of duration was fixed for the pact of 1924. It was not fixed expressly, but considering the special nature and the ends and purposes of political parties, the period could be no other than that of four years. For the purpose of the election to be held at the end of the four years pursuant to the Organic Act it was necessary to ratify the pact expressly or impliedly, or take some other action. And the Legislators of the Alliance prepared the way for the action thus taken by duly amending the law, and its directive body fully assented to the amended law. It did so knowingly, taking into account the fact that in so doing the Alliance would be considered as a single party with all the consequences appertaining to that status. And we say ''knowingly'' not only because the language of the law is susceptible of no other construction, but also because it was so expressed invariably in about a hundred and twenty-five certificates of convention signed by the two most conspicuous figures of the Alliance proceeding from the Unionist ranks, Antonio R. Barceló and Félix Córdova Dávila. It was not merely the secretary, but Messrs. Barceló and Córdova Dávila as chairmen of the conventions ''held by the Puerto Rican Alliance Party'' who so affirmed in official documents. And not only the directors demonstrated that understanding.

When documents were sent in relation to the candidacies for the election of 1928, proceeding directly from the municipalities, the Puerto Rican Alliance Party is therein expressly mentioned, as in the case of Yauco already referred to. As has been said, conventions are held only by political parties, according to section 36 of the Law, and when the Alliance nominated its candidates by convention it acted in harmony with its express purpose of converting itself into a single party.

But there is more. The resolution by virtue of which the Directive Committee of the Alliance decided to take advantage of the law amended by its legislators ordered that, the Executive Secretary should be requested to register the conjunction of the Union Party of Puerto Rico and the Puerto Rican Republican Party under the common name of the Puerto Rican Alliance to appear on the electoral ticket as a political party, and directed that the said resolution be communicated to the Governor, to the Executive Secretary, to the Insular Board of Elections, to the Local Committees of the Alliances, and to the public in general. And not only was the resolution adopted by the Directive Committee, but it was ratified in a convention of the Alliance held in the Municipal Theatre of San Juan on August 26, 1928, in which ratification it is said, in unmistakable terms, *"thus remaining as the patrimony of the Alliance the historical names of the two allied parties, as well as their emblems, personality, rights, and prerogatives."*

And thus it became finally consummated when, in conformity with the resolution of the Committee ratified by the Convention, the Alliance went to the polls in that way.

It is said now that if section 42 of the Election Law be construed as we have construed it, this Court should hold it to be unconstitutional. It was not the Alliance that challenged the constitutionality of the Election Law in 1928. It was its adversary, the Constitutional Historic Party. And in the legal proceedings it instituted, the views of this Su-

preme Court to which we have already referred were stated as follows (38 P.R.R. 400, 401):

"With respect to the name. In 1924 the former Republican Party split up into two factions. One of them retained the machinery of the party and continued to be known as Republican Party. The other had a separate convention and became known as the 'Partido Constitucional Histórico' and is the real petitioner in this case. The party desires to change its name to become 'Partido Republicano Puro.' The respondent as Executive Secretary of Porto Rico and also the intervenor, the Republican Party of Porto Rico, set up that the said Republican Party is still using the name and emblem of the party. The petitioner contends that the Republican Party has agreed upon a fusion with the Unionist Party and that therefore the said Republican Party has lost its personality. The latter, however, contends and shows that this fusion will not take legal effect until the actual day of the election. Section 42 of the Election Law, as amended May 7, 1927, provides:

" 'No political party shall adopt as a name or emblem a name or emblem which has been previously used or adopted by another political party, either in whole or in part, if such other party still claims and uses such name and emblem. . .'

"We are convinced that the Legislature has a right to prohibit the use of a name in whole or in part used by another party and that this prohibition will extend to a name that the other party still proposes to use in the coming election. It makes no difference that at the moment of the election or subsequently thereto the other party proposes to fuse itself with still a third party under a different name. The so-called Republican Party until the election has an independent legal existence."

"The so-called Republican Party until the election has an independent legal existence," we then said on June 25, 1928. The so-called Union Party of Puerto Rico had an independent legal existence until the day of the election of 1928, we now hold by applying the same test, for the fusion was concerted in conformity with the law and was sanctioned by the electorate.

"We are convinced that the Legislature has a right to prohibit the use of a name in whole or in part used by an-

other party and that this prohibition will extend to a name that the other party still proposes to use in the coming election," we then said also; and applying that ruling to the present case we now hold that as the name *"Unión de Puerto Rico"* is the patrimony of the Puerto Rican Alliance Party composed of the Union Party of Puerto Rico and the Puerto Rican Republican Party, which claims it in order to use it at the next election, the said name *"Unión de Puerto Rico"* can not be used by any other party or group, in accordance with the law which the Legislature had ample power to enact.

In the case of *Riter* v. *Douglass,* 109 Pac. 440, 447, an electoral case, it was said:

". . . . . Judge Cooley, in his great work on Constitutional Limitations, states: 'The rule of law upon this subject appears to be that, except where the Constitution has imposed limits upon the legislative power, it must be considered as practically absolute, whether it operate according to natural justice or not in any particular case. The courts are not the guardians of the rights of the people of the state, except as those rights are secured by some constitutional provision which comes within the judicial cognizance. The protection against unwise or oppressive legislation within constitutional bounds is by an appeal to the justice and patriotism of the representatives of the people. If this fail, the people in their sovereign capacity can correct the evil; but courts cannot assume their rights. The judiciary can only arrest the execution of a statute when it conflicts with the Constitution. . . Any legislative act which does not encroach upon the powers apportioned to the other departments of the government, being prima facie valid, must be enforced, unless restrictions upon the legislative authority can be pointed out in the Constitution, and the case shown to come within them.' Cooley's Constitutional Limitations (7th Ed.) 236–237. The Supreme Court of Pennsylvania tersely expresses the rule thus: 'Nothing but a clear violation of the Constitution—a clear usurpation of powers prohibited—will justify the judicial department in pronouncing an act of the legislative department unconstitutional and void.' Pennsylvania Railroad Co. v. Riblet, 66 Pa. 169 (5 Am. Rep. 360). Our own Supreme Court, in construing the legislative power of this state, held as follows: 'That the Legislature has the power to enact any law not prohibited by our Constitution.' State v. Arrington, 18

Nev. 412, 4 Pac. 735. It will be unnecessary to consume any time in considering all that has been said in the arguments and otherwise, as to the wisdom, policy, or expediency of the law in dispute, further than to say that this court has, in conformity with the incontrovertible law, held that as to these matters they are solely within the legislative department to determine, and for this reason no legislative act is subject to judicial repeal. Ex parte Boyce, 27 Nev. 299, 75 Pac. 1, 65 L.R.A. 47; Ex parte Kair, 28 Nev. 132–149, 80 Pac. 463, 113 Am. St. Rep. 817; Id., 28 Nev. 425–439, 82 Pac. 453.''

The powers of the Legislature of Puerto Rico arise from our Organic Act. None of the prescriptions and limitations contained in that Act prohibit such action as it took. The matter on which it legislated is within its jurisdiction. The fundamental right of the citizen to the vote was not destroyed or obstructed. Nor was the right of the electors to form groups or parties taken away or abridged. It was regulated. In enacting section 42 of the Election Law the Legislature created no new party. It simply established the rule under which one could be created.

We are quite familiar with the principle that if a law admits of two constructions—one making it constitutional and the other placing it beyond the limitations of the constitution —the former construction should be adopted by the courts; but we think that this principle is not applicable here, because it is our opinion that the law, as it has been construed and was well understood by the Union Party of Puerto Rico and the Puerto Rican Republican Party when they resorted to it voluntarily, is not unconstitutional. If perhaps the law could have been attacked as unconstitutional, although it must not be understood that we are so holding, it would have been, in so far as it prohibited the appearance of the same candidates on different tickets.

It is insistently maintained that in order that there could have been a fusion of the two parties into one it was necessary that the two parties should have been dissolved previously. We agree. To what we do not agree is that it was

necessary to call conventions of the old organizations and secure their consent to the dissolution. The dissolution was in fact agreed to by the acts of the directive bodies and was sanctioned by the electorate.

By the agreement new directive committees were created, insular or central and local, and they assumed the full direction of both parties. We know the sequence of events. It seems that the alliance turned out to be so complete and efficient in practice that the fusion was concerted from within by the recognized leaders of each of the parties. The amending of the Election Law, the resolution taking advantage of the amendment, the transfer to the patrimony of the Alliance of the names, the personality, the insignia, and the prerogatives of the parties which united in 1924, were all public acts. The only thing lacking was the action of the electorate, the supreme judge, and the electorate spoke in the election of 1928 approving the action of the leaders.

That there was power to act in this manner is deduced, if careful study be given to the matter, from all the cases cited in the briefs defining what are political parties, how they are organized, how they function, and what are their purposes and powers. We shall cite only two.

In *Davis* v. *Hanbrick*, 58 S. W. 779, 780, it was said:

"Political parties are voluntary associations for political purposes. They are governed by their own usages, and establish their own rules. Members of such parties may form them, reorganize them, and dissolve them at their will. The voters constituting such party are, indeed, the only body who can finally determine between contending factions or contending organizations."

And in *Morrow* v. *Wipf*, 115 N. W. 1121, 1126–1127, it was declared:

"Political parties are not creatures of the law. They exist independently of statutes; and have inherent power to regulate their own affairs subject only to such legislative restrictions as have been lawfully enacted.

". . .

"Political parties result from the voluntary association of electors. They do not exist by operation of law; and they possess plenary powers as to their own affairs in the absence of legislative regulation."

As we have stated, the disagreements arose after the election of 1928 when the Alliance had already become an organized party, and, as we also said, they did not arise among the groups of distinct origin, but among leaders of the two parties already interlaced and fused into the body of the collectivity. This being so, it is evident that their settlement devolved upon the governing bodies—the Directive Committee and Conventions—of the "Puerto Rican Alliance" itself, and, until these bodies should be called upon to investigate and decide, the Executive Secretary could not act nor could the courts interfere, according to the precedents and the jurisprudence applicable. We believe this to be so clear, that even the petitioners acknowledge it in a way in their seventh proposition. Abundant jurisprudence on the matter may be found in the brief of the *amicus curiae*.

During all the time devoted by us to the consideration and decision of this case the only hesitancy we have had is as to whether or not by our action those who so many times carried the old standard to battle would be precluded from freely returning to group themselves under it, but our conscience reacts when we realize that it is not solely the case of the petitioners which is here involved, but also that of their copartners in the pact and fusion who have not been fully heard and who have given notice that they stand firmly by their commitments and actions. The recognition of the personality which the petitioners claim for themselves implies the destruction of the personality created under the protection of the law by their free will and that of their former friends and associates. Opposing interests are involved and the fairest way is to apply the law as it was enacted, understood, and used, leaving each to abide by the consequences of his own acts.

The present is not indeed a proper case for the issuance of a writ of mandamus. Under the circumstances, the real ministerial duty of the Executive Secretary was performed by him in refusing to register the nominations of the petitioners as candidates of the Union Party of Puerto Rico.

After all, it must be conceded that although the name of a political collectivity has great affective importance and may exert notable influence in the success of an election, it is the electors who with their votes have the final control of the election. If it be true that the petitions have preserved all the strength of the old party to which they belonged and that the Alliance does not have the support of the voters, the latter will have an opportunity to express themselves at the election of 1932 under any party name that the petitioners may choose to go to the polls in accordance with the law.

The petition for a writ of mandamus must be denied.

MR. JUSTICE ALDREY, dissenting.

This is a petition for mandamus filed in this Court requesting us to direct the Executive Secretary of Puerto Rico, Mr. Saldaña, to register the names of the candidates for certain offices to be voted for at the general election of 1932 certified to by the officials who presided the convention of the Union Party of Puerto Rico held in October 21, 1930; to direct the said Secretary to certify to the Insular Board of Elections the nomination of the petitioners to be printed on the official ballots of the election to be held in 1932; and to direct him to notify the aforesaid Board that the Union Party of Puerto Rico is the majority or principal party with the right to designate inspectors and secretaries for the registration boards and polling places on election day.

It is alleged in the petition that the Executive Secretary of Puerto Rico has refused the above requests, and in the answer of the aforesaid official to the rule issued by us for him to show cause why the writ sought should not be issued, he alleged as the only ground for his refusal of such requests

that in the general election of 1928 the Union Party of Puerto Rico and the Puerto Rican Republican Party became merged or converted into a single political party bearing the name of Puerto Rican Alliance, which figures now as the majority party.

The following are the facts as they appear from the record before us:

In 1904 there was organized in this Island the political party called Union Party of Puerto Rico whose candidates at that year's general election registered a majority at the polls. That party received also a majority of the votes cast at the general elections held in 1906, 1908, 1910, 1912, 1914, 1917, and 1920. The votes received by the Union Party of Puerto Rico at the 1920 election amounted to 126,446, and the Puerto Rican Republican Party, which was next in the number of votes polled, received 63,845 votes, and as the other parties received only 11,380, the above two became the two principal parties.

These two political parties, the Union Party of Puerto Rico and the Puerto Rican Republican Party, held conventions in May, 1924, the former in the city of San Germán and the latter in the city of Mayagüez, in which they adopted the following resolution, which we transcribe from the petition for mandamus in the present case, accepted in this particular by the Executive Secretary and corroborated by the minutes of the San Germán Convention to which we have referred:

"(a) To form with the Puerto Rican Republican party a political coalition which shall be called The Puerto Rican Alliance.

."(b) The Puerto Rican Alliance, shall assume and exercise all of the powers and prerogatives appertaining to the two historic parties of Puerto Rico called the Union Party of Puerto Rico and the Puerto Rican Republican Party.

"(c) The Puerto Rican Alliance shall direct all of its strength to the consecration of full self-government in order to attain the sovereignty of the People of Puerto Rico within the sovereignty of the United States.

"The Board of Directors of the coalition shall determine the form of choosing the candidates whose names shall appear on the ballot, it being understood that the parties so allied shall preserve their respective personalities, names, and insignia.

"The management and conduct of the coalition shall be vested in a Directive Committee composed of 15 permanent and 15 alternate members chosen as follows: 7 permanent and 7 alternate members designated by the convention of the Union Party of Puerto Rico from a list of 21 furnished by the convention of the Puerto Rican Republican Party, and 7 permanent and 7 alternate members designated by the convention of the Puerto Rican Republican Party from a list of 21 furnished by the convention of the Union Party of Puerto Rico, and one permanent member and one alternate member who shall be designated unanimously by the 14 permanent members. The Directive Committee shall select from its own members an executive committee composed of three members. The powers of the Executive Committee shall be determined by the Directive Committee and said Executive Committee shall reside and hold its sittings in the city of San Juan. After the conventions of the respective parties shall have approved the platform of the coalition, its bases, and the proceedings to be followed, they shall remain in recess for the duration of the coalition, as well as the other organizations of the allied parties, their functions being suspended. The quorum for holding sittings of the Directive Committee shall be constituted by 10 members functioning legally, and no resolution shall be effective unless it has been approved by at least 9 members at any sitting for which the members of the Directive Committee shall have been called.

"If notwithstanding the above call no sufficient number of members of the directive committee are present in order to constitute a quorum, a new and second call shall be issued and, after the call, the quorum to hold a sitting shall consist of 8 members only.

"The president of the Directive Committee shall act as the president of the Executive Committee, but in no case shall the latter committee be totally constituted from members belonging exclusively to one of the parties constituting the alliance.

"The local committees for the coalition shall consist of 7 members designated as follows: 3 unionists, 3 republicans, and the seventh to be designated by the Directive Committee. The Directive Committee shall select the members of the local committees of the coalition from among the members of the local organizations of the respective

parties in the municipal districts, provided there can be found persons affiliated within the coalition; otherwise the selection may be made, in whole or in part, from persons not members of the committees.

"The members of each party in the said committees shall assume the functions pertaining to the party which they represent for the purposes of the electoral and municipal laws."

In November, 1924, a general election was held in this Island in which the two aforesaid allied parties figured in separate columns in the official ballot, but both of them nominated the same candidates for the offices to be voted for at the election. In that election 132,755 votes were cast for the Union Party of Puerto Rico and 30,286 for the Puerto Rican Republican Party, which added together resulted in 163,041 votes received by the candidates of the allied parties. The result was that 81 per cent of that total was received by the Union Party of Puerto Rico and the remaining 19 per cent by the Puerto Rican Republican Party. It also happened that the 132,755 votes registered by the Union Party of Puerto Rico exceeded by 10,749 the total number of votes polled by all the other parties, with the result likewise that the votes received by the Puerto Rican Republican Party scarcely amounted to one-fourth of the number registered by its allied party.

On the 28th and 31st of August and on the 5th and 25th of September, 1928, there were forwarded to the Executive Secretary of Puerto Rico certificates of nomination for the general election of November of that year, almost all of them substantially the same, although with different names and candidates designated according to the office. We will transcribe one of them reading as follows: "Puerto Rican Alliance—Certificate of Nomination—The undersigned, president and secretary of the convention held by the Puerto Rican Alliance in San Juan, P. R., CERTIFY: That the members of the said convention, having assembled on call for the purpose of nominating candidates of the Puerto Rican Alli-

ance for the offices of Resident Commissioner to the United States, senators and representatives at large, and members of the Board of Review and Equalization who shall figure on the tickets in the next November election, a vote was taken among those present and the result showed that the following gentlemen were nominated:'' The names of certain gentlemen are mentioned as candidates for certain offices, the document then concluding thus: ''And for transmission to the Executive Secretary of Puerto Rico in compliance with section 36 of the Election Law in force we sign this certificate at San Juan, P. R., on the 28th of August, 1928.'' There follow the signatures of the president and the secretary. Another certificate reads as follows: ''Puerto Rican Alliance Committee, Aguadilla, P. R.—I, J. B. García Méndez, secretary of the local committee of the Puerto Rican Alliance at Aguadilla, CERTIFY: That at a meeting of this committee held on the 22nd of September of the current year, Salvador Badillo Méndez was nominated as candidate for the Municipal Assembly of Aguadilla and he shall appear as such on the electoral ticket for the Puerto Rican Alliance. And for transmission to the Executive Secretary of Puerto Rico I issue this certificate at Aguadilla, Puerto Rico, on the 25th of September, 1928.'' There follows the signature of the secretary of the local committee of the Alliance. We will not transcribe here a certificate of the Convention of the Puerto Rican Alliance held at San Juan on the 26th of August, 1928, which is mentioned in the opinion given by the Attorney General at the request of the Executive Secretary of Puerto Rico, dated August 30, 1931, because said certificate does not appear in full in that opinion and because it was not introduced in evidence by the respondent, the Executive Secretary of Puerto Rico, although it was in his possession, so that the other party might produce what was missing or make any objection deemed to be proper, if any there was. In that opinion, after giving his advice on some of the questions involved therein, he concluded by informing the Executive Secretary

that he should deny the petition so as to enable the rival claimants for the party name "Union of Puerto Rico" to have the controversy settled by the courts which in the last resort are the ones to settle the matter.

In the general election of 1928 both allied parties registered their common ticket in a single column in the following manner: An evenly balanced pair of scales with the insignia of both parties and underneath the words "Puerto Rican Alliance of the Union Party of Puerto Rico and the Puerto Rican Republican Party".

From the consummation of the alliance or coalition of those two parties in 1924 their respective directive organizations were left in recess, but in August, 1929, a general convention of the Union Party of Puerto Rico was held in the same manner as that of 1924 wherein it was resolved to make the aforesaid alliance, and resolved to declare the dissolution of the alliance of said party with the Puerto Rican Republican Party. This resolution was notified to the President of the Puerto Rican Republican Party and also to the Executive Secretary of Puerto Rico, Mr. Saldaña, who on August 28, 1929, replied to the President of the Union Party of Puerto Rico that he had filed in his office a copy of that resolution for the proper action in accordance with the Election Law.

Thereafter, on September 11, 1929, Valldejuli, in his dual capacity as secretary of the Convention of the Puerto Rican Alliance and as secretary of the Insular Committee of that collectivity, notified the Executive Secretary of Puerto Rico that at a convention of the Puerto Rican Alliance of the Union Party of Puerto Rico and the Puerto Rican Republican Party it was resolved to ratify the resolutions which brought the Puerto Rican Alliance into existence and which had been confirmed by the acts of the general convention of 1928, the said alliance having been recognized and consecrated as a single party by the law and by the vote of the Alliance Party in the 1928 election; and that it also resolved that the central committee of the collectivity called Directive Com-

mittee of the Puerto Rican Alliance be known henceforth as the "Insular Committee of the Puerto Rican Alliance," with all the powers of the former. He likewise notified the Executive Secretary of Puerto Rico that the Insular Committee of the Puerto Rican Alliance met on September 5, 1929, with the presence of 34 members both permanent and alternate constituting a quorum, and approved a motion to notify the Executive Secretary of Puerto Rico that the Alliance of the Union Party of Puerto Rico and the Puerto Rican Republican Party claims for itself the name under which it went to the polls in the last election, as appears of record in the office of the Executive Secretary of Puerto Rico. In another communication from the same person acting in the same capacity as formerly, the Executive Secretary of Puerto Rico was notified on September 13, 1929, that the convention in question had appointed a president, four honorary presidents, two vice-presidents and two secretaries, to the Puerto Rican Alliance. Likewise, Díaz García as President of the Puerto Rican Alliance notified the Executive Secretary of Puerto Rico on November 2, 1929, that the name "Union of Puerto Rico" belongs exclusively to the Puerto Rican Alliance, by virtue of the law, and that that alliance has been sanctioned by the electors.

The ground on which the Executive Secretary of Puerto Rico based his opposition to the petition before us is that, by reason of the Union Party of Puerto Rico and the Puerto Rican Republican Party having gone to the polls in 1928 with their candidates aligned in a single column, both parties have ceased to have a separate existence, as they have become merged or transformed into a single political party called the Puerto Rican Alliance.

We must state that the Spanish word "fusión" ("merger" in English) does not have the same meaning as the English word "fusion," which means coalition, as may be seen in Nicholls v. Barrick, 27 Colo. 432. This is not necessary for a construction of the Election Law where such word does

not appear, but for a reading of the judgments of the American tribunals dealing with the matter.

In accordance with the law, the Union Party of Puerto Rico became by reason of the number of votes polled by it in the 1924 election the majority party, which status was kept by it during successive elections and was held by it in 1924, when it allied itself with the Puerto Rican Republican Party.

The law in force when the general election of November, 1924, took place allowed a person to appear as the candidate of two or more political parties, and in accordance therewith, after the consummation of the alliance, both allied parties appeared in separate columns with their respective insignia but both having a common ticket. Act No. 79 of June 25, 1919, known as the Election Law, section 40, as amended on June 18, 1924.

The act and section above cited were amended by Act No. 1 of May 7, 1927 (Session Laws, p. 394), providing that no person shall be a candidate for more than one office, nor for the same office on two or more different tickets. Section 42 of the same act was also amended as follows:

"Section 42.—The name and emblem used to distinguish each of the principal or organized political parties on the election ballot, shall be the same that were used by each such party in the preceding election, unless a change in such name or emblem shall be certified to the Executive Secretary of Porto Rico on or before the 20th day of September of the year of the election in which it is to be used.

"No political party shall adopt as a name or emblem a name or emblem which has been previously used or adopted by another political party, either in whole or in part, if such other party still claims and uses such name and emblem, nor shall any political party use as an emblem on an election ballot the flag or coat of arms of the United States or of Porto Rico, and the Executive Secretary of Porto Rico is hereby authorized and directed to refuse to accept any name or emblem of a political party which shall be offered for registration or record in his office which violates the provisions of this Section. If any political party fails to duly register an emblem with the Executive Secretary of Porto Rico on or before the 20th day of September of the year of the election in which the same is

to be used as required by this Act, the Executive Secretary shall designate an emblem for such party which shall be used to distinguish the said party on the official ballot.

"Any principal or organized political party desiring to change its name or emblem may do so on certificate of the central directing body of said party, filed in the office of the Executive Secretary, and such party shall not therefor lose the rights and privileges granted thereto by law as such principal or organized party; *Provided,* That such parties as at the previous election went to the polls as an alliance or coalition and registered separate tickets in which the same candidates either totally or in part appeared for the same offices, may file in the office of the Executive Secretary of Porto Rico on petition of the central directing organization of said alliance or coalition, a general name and an insigne for said alliance or coalition containing the insigne of each of the allied or coalition parties, and underneath it one sole ticket shall be registered under the prescriptions of Section 40 of the Election and Registration Law as hereby amended; *Provided, further,* That any alliance or coalition, going to the polls under one name or insigne as determined in the foregoing proviso, shall be considered as one single party with the same prerogatives, rights and duties as under the law pertained to the parties composing it, and hereafter it shall be considered as a principal or organized party, according to the number of votes obtained thereby at the election, as herein provided."

This act was introduced in the Legislature in Spanish and went through all its stages in that language.

By reason of these amendments the Alliance of the Union Party of Puerto Rico and the Puerto Rican Republican Party being unable to use separate columns with the same candidates, as was done in 1924, had to print the names of their candidates in a single column under the name and emblem as aforesaid, those of the Alliance of the Union Party of Puerto Rico and the Puerto Rican Republican Party.

By reason of the last amendments to sections 40 and 42 of the Election Law and from the fact that the alliance of these two parties went to the polls in 1928 with their candidates in a single column on the ballot, there arises the main point at issue in the present case, that is, whether in that

election the two allied parties, the Union Party of Puerto Rico and the Puerto Rican Republican Party ceased to have separate existence by reason of their merger or transformation into a new party called Alliance of the Union Party of Puerto Rico and the Puerto Rican Republican Party, by provision of law, or whether there was neither such merger nor a new party and therefore each one of them keeps its personality, insigne, and electoral prerogatives to be used by them in case of a dissolution of such alliance; and the latter is what has happened in the present case.

There is nothing in that Law to the effect that the parties which in previous elections went to the polls as an alliance or coalition and may take part in the 1928 election under a general name for said alliance or coalition with an insigne containing the insigne of each of the allied or coalition parties in a single ticket shall become merged (*fusionados*), according to the Spanish meaning of that word, or converted into a new party composed or formed by the merging (*fusión*) of both parties into a new one. What the law provides is that the alliance or coalition thus going to the polls in 1928 shall be considered as a single party with the same prerogatives, rights, and duties as under the law (at the time of its enactment) pertained to the parties composing it and that hereafter it (such alliance) shall be considered as a principal or organized party according to the number of votes polled by it at the election, as provided in that law. The word "*como*" (as) is a comparative adverb according to the Spanish grammar. When a thing is considered as another it is so because it is not the other; and when an alliance of two or more parties is considered as a single party it is so because it is not a single party but that it shall be considered as if it were one party with the prerogatives, rights, and duties that pertained to the parties. The phrase "shall be considered as" can not be mistaken for the expression "shall become constituted or converted into". A thing, an entity, a right, may be considered as another entity or right

without becoming identical with the latter. The courts must not read into the law what has been omitted or omit what has been inserted. *People* v. *González,* 20 P.R.R. 553.

If the Legislature had meant to convert the allied parties into a single party it would have stated that after the election that alliance or coalition shall become converted into one party, shall become one party, or similar words. Therefore, we are of the opinion that construing the words of the statute in their most usual signification and according to their general and popular use, as provided in section 14 of the Civil Code, we must reach the conclusion that the act did not transmute into a single party the two political parties whose candidates appeared in one single ticket on the ballot under the insignia of both parties. On the other hand, to maintain that the law created a new party composed of the two allied parties, from the fact of their having gone together to the polls in one single column on the ballot, having been compelled to do so because the law did not permit them to do otherwise, would be equivalent to asserting that the Legislature can create political parties, and this is not so, as is acknowledged by the Attorney General in the case at bar; and also because the law would thus tend to prevent the coalition of parties, which is a thing generally allowed.

For the construction of that enactment there may be taken into account also other parts of the Election Law. This law creates an insular permanent board of elections whose functions are, among others, to supervise and conduct the elections, to approve rules and regulations for such elections, to revise and correct voting lists, to cancel registrations of electors on evidence submitted to that effect, and to canvass the votes. Said board, vested with such important powers, is composed of three persons, one to act as chairman who shall be designated by the Governor with the advice and consent of the Senate, and the other two representing the two principal political parties of the Island. At each polling place in every precinct there shall be a poll board which shall consist of two inspect-

ors and two poll clerks to conduct the election and canvass the votes. At the 1924 election the two principal parties were the Union Party of Puerto Rico and the Puerto Rican Republican Party by reason of the number of votes registered by them in the previous election; and according to the law the other political parties having polled a certain percentage of votes at the previous election shall be only entitled to have in the polling boards an observer with no vote.

In view of such legal situation, we think that the purpose of section 42 of the Law as amended in 1927 was to prevent the two principal parties, which were allied, from having each of them a seat in the Insular Board of Election and in the poll boards, thus leaving the other parties without representation, and this is why it was therein provided that the parties going to the polls as allies in 1928 should be considered as a single party so that as a single party it should have one representative in the polling places; that it would be likened for the purpose of the Election Law to one party without ceasing to be an organization composed of two entities; that when acting jointly and in relation to the Election Law they would have no other rights and privileges than those pertaining to any other party, but preserving its coalition structure since none of them gave its consent to be merged into or consolidated with the other. Furthermore, if the law had meant the coalition parties to become merged or converted into a single party after the 1928 election, it would not have said "shall be considered as a single party" with the same prerogatives, rights, and duties as under the law pertained to the parties composing it. Because once the parties forming the alliance had merged or disappeared, their separate life having been extinguished by their conversion into a new party, they could not continue with the prerogatives, rights, and duties of each of them, since they had ceased to be such parties. Moreover, the adverb "as" has not been used inadvertently, since it appears in each of the last two provisos of that section of the law.

It is no objection to the conclusion reached by us to say that the allied parties were not bound to go to the polls with a general name and on a single ticket, because unless they then dissolved their alliance the law did not allow them to go to the polls in any other way. Nor does the consent of the allied parties to go to the polls in the only way allowed them by the law and the voting for the same candidates amount to an endorsement by the electors of the merger or consolidation of both parties into a single party, as the coalition electors were not free to abstain from voting, under penalty of having their names stricken from the voting lists in the two subsequent elections. So that there was no freedom either as to their vote or as to the question of the merger which was not submitted to the electors in a referendum, as was done in the case of the Prohibition Law. Besides, that question ought to have been submitted exclusively to the followers of the Union Party of Puerto Rico and the Puerto Rican Republican Party and never to the voters in general, thus permitting the contending parties the right to settle their own internal problems, such as their dissolution and merger with each other.

The fact that, in certifying to the Executive Secretary the names of the nominees, it was stated at the top of the certificates that the signers were the president and the secretary of the convention held by the Puerto Rican Alliance Party is not proof that at the time they were signed, August and September, 1928, the Puerto Rican Alliance had been converted into one party, because certificates are evidence as to the contents of the documents only, and in the body of the certificates it is stated that the candidates belong to the Puerto Rican Alliance, but it is not stated that they belong to the Puerto Rican Alliance Party; because the captions of such certificates are in conflict with the printed letter-head which says "Puerto Rican Alliance," being in conflict also with the body of the certificate wherein it is stated that they are candidates of the Puerto Rican Alliance; because it does

not appear from the record that on the aforesaid dates the Puerto Rican Alliance of the two parties had been converted through any agreement between them into a single party, it appearing on the contrary that they have not made any other agreement subsequent to the pact of 1924; and because said certificates were dated prior to November, 1928, the election of that year being alleged to have converted the Puerto Rican Alliance into a party.

The reasonable construction of that law is the one given by us in accordance with the rules of statutory construction prescribed in sections 14 and 17 of our Civil Code. To give it the construction advocated by the Executive Secretary of Puerto Rico is not only to go against the letter of the law but it would lead to the conclusion that such law is unconstitutional, as we shall see, thus violating the well settled rule that a statute must be so construed as to harmonize it, wherever possible, with the Constitution. *Union Central Life Ins. Co.* v. *Gromer,* 19 P.R.R. 856; *People* v. *Frisbie,* 26 Cal. 135; *People* v. *Hayne,* 83 Cal. 117; *Re Stewart,* 35 L.R.A. 427.

If that law were held to dissolve the two allied or associated parties, the Union Party of Puerto Rico and the Puerto Rican Republican Party, and to convert or merge them into a new one called Puerto Rican Alliance, such a law would turn out to be in conflict with the Federal Constitution and our Organic Act, because it would hinder people, legally entitled to vote, in the exercise of their political franchise and in their right to combine freely.

In effect, it would prohibit the coalition of parties under penalty of being considered to be merged as alleged by the Executive Secretary, without their consent, into one single party; and in *Martínez* v. *Saldaña,* 38 P.R.R. 398, this Court held that the voters must be free to combine. Moreover, as we have stated before, what the allied parties were allowed to do in the 1924 election, is denied to those which afterwards

became allied. In *Murphy* v. *Curry*, 137 Cal. 479, the following was said:

". . . There can be no solid foundation in reason, therefore, for depriving one political party of the right to have placed upon its ballot the names of its nominees, solely because some other political party has seen fit to select the same men. From the moment that the legislature under the Australian ballot law saw fit to recognize political parties as entities, and to circumscribe their spheres of action, it became the duty to treat all justly and impartially, and it is unjust, discriminating, and illegal to deprive in this instance the Democratic party of the right to place the name of its nominee for the House of Representatives upon the official ballot,—an injustice which is accentuated by the fact that in addition to this refusal the state officially conveys the false information to its voters that the Democratic party has made no nomination whatsoever for the office.

"Nor when the rights of the nominee are considered will this law be found any more satisfactory. It is not a question of 'Party fealty' or 'party sentiment', and it only disposes of those rights by sweeping them away to say that 'mere party fealty and party sentiment, which influence men to desire to be known as members of a particular organization, are not the subjects of constitutional care.' It is admitted that any nominee has the right to insist that his name shall be placed upon the official ballot, not only in its appropriate place, but with suitable printed words, to inform the voter that he is the nominee of a particular political party. Mr. Livernash, in the case at bar, has the unquestioned right under our election laws to insist that his name shall appear upon the ballot as the nominee of the Union Labor party, and he may compel the enforcement of this right by mandate. In this instance, therefore, the state has seen fit to recognize the desire of men to be known as members of a particular political organization, and has given them a right enforceable at law. Why, if it be the nominee's right to have the information conveyed to the voters, and if it be the state's duty to convey the information that he is the choice of one political party, should the law deprive him of the right to have the electors know that he is the choice of more than one party? The answer to this question will be found in what must have been the intent of the lawmakers—to prevent the combination or fusion of two or more political parties by their selection in common of the same candidates.

But until it is pointed out to us that such a combination or such a fusion is violative of the constitution of the United States or of this state, or is against public policy, it must be held that the legislature herein has sought to exercise illegal control over political parties and their nominees, and in so doing has aimed an unwarranted blow at a vital principle of our republican government.''

The above decision reviews and discusses the contrary doctrine, which it rejects, of the supreme courts of Michigan, Ohio, and Wisconsin, the first of which reversed its holding afterwards as is stated in *Matter of Hopper* vs. *Britt,* 203 N. Y. 144, sustaining the California theory just cited. See also *Matter of Callahan,* 93 N. E. 262.

The opposition cites decisions adverse to those mentioned by us, but we follow the latter because it seems to us reasonable and just that if a candidate for an elective office has the support of several parties he can be nominated by them and not by only one of them. .

The Constitution of the United States, by its Fourteenth Amendment, like section 2 of our Organic Act, forbids the enactment of any law impairing the obligation of contracts, and the construction sought to be given to the statute in question would violate these fundamenal provisions of our Public Law, since the said statute having been enacted during the existence of an agreement or alliance under certain conditions it prevents those parties from continuing such alliance. In 12 Corpus Juris, pages 1057 and 1058, it is said that a law enacted subsequent to an existing contract which, if valid, will have the effect of annulling the contract constitutes the most palpable form of legislative impairment, and such an enactment is clearly unconstitutional. If a law changes the legal effect of a contract, it impairs it within the sense of the constitutional safeguard. The agreement, contract, coalition, or alliance of the two parties was made, as we have seen, when it was allowed by the law, and their merger was not stipulated, a new condition to be imposed by the sections under consideration on those who had previously contracted,

thus altering the conditions of their agreement and dissolving it against their will, impairing in that way said pact or agreement. 6 R.C.L. 328 and 329. This prohibition applies not only to agreements within the scope of the Civil Code but also to every instrument, ordinance, and measure under any name, containing the inherent characteristics or purposes of a contract and establishing thereby *bona fide* mutual obligations. In the pact or alliance of those two parties we fail to find anything to show that it was made only for the 1924 election, as claimed by the respondent.

In *Martínez* v. *Saldaña, supra,* it was not declared that the pact or alliance of the Union Party of Puerto Rico and the Puerto Rican Republican Party was to last four years only, nor could that declaration be made as that question had not been submitted for a decision. There the mandamus proceeding was instituted by Martínez Nadal as president of the political party known as "Constitucional Histórico" for three purposes, one of them being to obtain authorization to change that name to "Partido Republicano Puro" and this was opposed by the intervener "Partido Republicano Puertorriqueño," and the petitioner having alleged that the Republican Party had agreed to effect a merger with the Unionist Party and therefore the former had lost its personality, the said intervener, "Partido Republicano," answered through José Tous Soto that such merger would not have any legal effect until the election. This is why this Court, in deciding that controversy, said that "It makes no difference that at the moment of the election or subsequently thereto the other party proposes to fuse itself with still a third party under a different name. The so-called Republican Party until the election has an independent legal existence." That decision did not hold that the Alliance of the Union Party of Puerto Rico and the Puerto Rican Republican Party only had existence until the election and that therefore it terminated four years from the time it had been agreed. No such thing has been declared either in the party agreement, in the law, or in the

cited decision in regard to the alliance or coalition of the Union Party of Puerto Rico and the Puerto Rican Republican Party. By reason of all the foregoing, we uphold the construction which we gave at the start to the law in harmony with its text.

The conclusion having been reached by us that the two parties did not become merged or consolidated either by law or by the manner in which they went as allies to the polls in 1928, let us see now whether such alliance or coalition is in existence or whether it has become dissolved.

Political parties are voluntary associations of electors having an organization and opinion distinctive and common, attempting through their organization to elect officers and make their principles the policy of the government. They are thus defined in *Ex parte Wilson,* 7 Oklahoma Crim. 610, 125 Pac. 739, cited with approval in *State ex rel. McGrael* v. *Phelps,* 144 Wis. 1, 35 L.R.A. (N. S.) 353; this latter case having been cited several times in *Martínez* v. *Saldaña, supra.* The Election Law recognizes political parties in some of its provisions.

Political parties may form associations or alliances among themselves, as is acknowledged by the law when providing that those parties which went to the polls in 1924 forming a coalition may do so in a certain way in 1928.

The coalition or alliance of the Union Party of Puerto Rico and the Puerto Rican Republican Party was made between them without a definite term or purpose and, therefore, either of them could terminate such alliance by a resolution of its convention; but without a previous resolution of the conventions of the two parties their fusion into one, involving the dissolution of both parties in order to constitute a new one as the sum or fusion of the two, could not be effected, nor could the representatives of each party in the Directive Committee of the Alliance make such fusion because they had not been authorized for that purpose, by their respective conventions, and in their capacity as delegates, agents or repre-

sentatives of their parties they had no greater authority than that conferred on them. Nor could that authority reside in the Alliance group constituting a majority in the Legislature, because such group had powers conferred on it by the electors to legislate for the people of Puerto Rico and not for the creation or dissolution of parties, which function belongs to political bodies. The conventions of the two parties never voted such fusion and consequent dissolution of their respective parties. This could only have been done by the conventions.

Now, as a convention of the Union Party of Puerto Rico resolved to terminate the alliance formed with the Puerto Rican Republican Party and served notice to that effect on the latter of these two parties as well as on the Executive Secretary of Puerto Rico, it follows that henceforth the coalition or alliance between the two was terminated and therefore the two parties were left as they were before going into the alliance, each of them, therefore, regaining the private use of the respective insignia, emblems, and rights which they had.

As may be seen, this is not a question to be submitted for decision to the directive organization of the two allied parties, composed of members from both parties, because this is a case of a resolution taken by an ally which does not want to continue the alliance, or in other words, of a partner who does not want to continue the partnership.

It follows from the foregoing that the Puerto Rican Alliance of the Union Party of Puerto Rico and the Puerto Rican Republican Party exists no longer and therefore that the Union Party of Puerto Rico which has appeared in the office of the Executive Secretary of Puerto Rico and on the ballot as an organized and majority party during 27 years, is entitled now by reason of the dissolution of the alliance to have its name with the emblems and insignia formerly belonging to it to appear in the official register of the respondent and on the ballot; and that this is a ministerial duty imposed by

law on the Executive Secretary of Puerto Rico if the number of votes registered by said Unionist Party in the last election entitles it to be considered as an organized principal party.

It is true that the office of the Executive Secretary of Puerto Rico has been notified that the Puerto Rican Alliance is still in existence and has the exclusive right to the name "Union of Puerto Rico"; but apart from the fact that the first statement has been contradicted by the manner in which the president of the alliance has been appointed, because of the constitution of an Insular Committee composed of at least 34 members both permanent and alternate, all of which is contrary to the bases on which the alliance was made in 1924, anyway it can be seen that all this rests on the theory that the law and the voters made the merger of the two parties which formed a coalition called Puerto Rican Alliance and therefore that the Union Party of Puerto Rico no longer exists; a theory and a conclusion which we have already declared to be erroneous.

In the last election, which was held in 1928, the Union of Puerto Rico and the Puerto Rican Republican Party voted for a ticket in a single column and therefore their votes are commixed; but in a situation rather similar to the present one it was decided by the Supreme Court of Minnesota in *Higgins* v. *Berg, Secretary of State*, 42 L.R.A. 245, that said Secretary might resort to any rule or method to ascertain approximately the vote polled by each party which he deemed to be fair and practicable, and accordingly it was suggested by the court to apportion the combined vote between the parties on the basis of the average vote polled by each at the last general election next before the nomination by them of a duplicate ticket; and unless the said Secretary acted in the premises fraudulently or unfairly, or clearly upon an improper and prejudicial basis, his decision would not be disturbed by the courts. We endorse that suggestion of the Supreme Court of Minnesota because we consider the same to

be just and equitable to the parties concerned; and as at the previous election of 1924, when both allied parties figured in separate columns notwithstanding each had nominated the same ticket for all the offices, the Union Party of Puerto Rico polled 81 per cent of the total vote for said ticket and the Puerto Rican Republican Party the remaining 19 per cent, the respondent might in the present case, using those percentages as a basis, ascertain the vote polled by each of the allied parties at the 1928 election.

The peremptory writ of mandamus prayed for in the present case should be issued.

MR. JUSTICE TEXIDOR, dissenting.

I fully concur in the opinion of Mr. Justice Aldrey; but I wish also to state the following:

As to the construction of the words: *"shall be considered as a single party with the same prerogatives"* and *"hereafter shall be considered as a principal or organized party according to the number of votes obtained,"* I must begin by separating what makes reference to the last-named phrase, for the following reasons:

The Election and Registration Law makes a distinction between principal parties and organized parties (section 14 of the Act of June 25, 1919) according to the number of votes registered. And this same point is referred to in the words already quoted and which appear at the end of the proviso. Such a point has no importance in the determination of the present case.

As to the first phrase quoted, before any other consideration, I am of the opinion that in order to ascertain its true meaning we must study and investigate it in the Spanish language in which the law was originally drafted and went through its stages.

For those cases where there is ambiguity, or rather a discrepancy, between the English and the Spanish texts, Act No. 8 of November 12, 1917, provides that if the statute is of

Spanish origin the Spanish text shall be preferred to the English. Although it is not indispensable to rely on this rule of hermeneutics, I have quoted it in case there was any doubt on this point.

"To consider," taken by itself, separately, is to take into account, to foresee, to pay attention; and it may also mean to treat another person with deference and regard, according to the dictionary of the Spanish language published by the Spanish Royal Academy.

"To consider as," in which form it is used in the Act in question, with the addition of the adverb, has a wider mean-ing. The adverb "as" may, according to the same diction-ary, have the following meaning:

"Comparatively it expresses the idea of equivalence, likeness or equality, and generally means the way or manner that, or the way or manner of. *He is as blond as gold; he looked as if dead; he met two who looked as clerics or students.* Dictionary of the Spanish Royal Academy, 14th edition.

It can not be maintained that the law meant to say that the alliance or coalition in question was a matter of thought or study; especially if it qualifies the verb "to consider" with the adverb "as" which not only shows but declares the intent of the phrase. When we say: "I consider him as dead," "he is as blond as gold," we do not express that the subject is dead, or that his hair consists of gold; we establish a term of analogy or comparison, not a final affirmation as would be the case if we said "he is dead" or "this is gold".

We are within the scope of section 13 of the Civil Code which sets up a rule for the application of the law and not for its strict construction.

"Section 13.—When a law is clear and free from all ambiguity, the letter of the same shall not be disregarded, under the pretext of fulfilling the spirit thereof."

This legal precept is constantly applied as a matter of jurisprudence in the United States and in Puerto Rico. The legal doctrine is that in the interpretation of statutes words

in common use are to be construed in their natural, plain, and ordinary signification; that so long as the language used is unambiguous, a departure from its natural meaning is not justified, and it is the plain duty of the court to give it force and effect. See 36 Cyc., pages 1114 and 1115, and notes.

"In order to get at the spirit or meaning of a statute, contract, or constitution, resort should be had first in every case to the natural meaning of the words in the order of their grammatical arrange· ment given them by the framers of the document. If the words embody a definite meaning which is neither absurd nor in conflict with the other parts of the same instrument, then that meaning which is apparent upon the face of the instrument must be accepted and neither courts nor legislatures have a right to add to or take away from that meaning. Newell v. People, 7 N. Y. 9, 97; Hills v. Chicago, 60 Illinois, 86; Denn v. Reid, 10 Pet. 524; Leonard v. Wiseman, 31 Maryland 201, 204; People v. Potter, 47 N. Y. 375; Cooley, Const. Lim. 57; Story on Const. par. 400; Boardstown v. Virginia, 76 Illinois, 34. Where a law is plain and unambiguous, whether it be expressed in general or limited terms, the legislature should be intended to mean what they have plainly expressed, and consequently, no room is left for construction. United States v. Fisher, 2 Cranch 358, 399; Doggett v. Florida Railroad, 99 U. S. 72.

.    .    .    .    .    .    .    .    .    .

"Words are the usual signs employed by men to declare their intentions to others; and when the words used by a man express his meaning clearly, distinctly, and perfectly, there is no room to resort to any other way of construction."

This doctrine has been followed in this jurisdiction, notably in *Julbe* v. *Guzmán*, 16 P.R.R. 502.

The words of the statute are not ambiguous. Let us see:

". . . that *such parties* as at the previous election . . . . . may file a *general name* and an insigne for said alliance or coalition containing the *insigne of each of the allied or coalition parties* . . . . . that any alliance or coalition going to the polls under one name or insigne, *shall be considered as one single party* with the same prerogatives, rights and duties as under the law *pertained to the parties composing it*."

The italics in the above excerpt are ours.

Let it be noticed that the law always employs "the parties" in the plural and that it foresees the case where they, both of them, go to the polls as allied parties; that it confers on them the right to use an insigne, that of the Alliance, ·containing the insignia of the two allied parties which are recognized by the law as subsisting after the alliance or coalition; and that it considers them afterwards, when, allied, as having the status of a single party for which no new rights, prerogatives, and duties are created, but that they maintain, not those they *had,* but those which they have under the law.

If the law had meant to merge into one those two parties, ·it would neither keep "the parties" in the plural, nor would it allow to subsist the insigne of each party coexisting with that of the coalition. If it had meant to declare the two parties as extinguished it would have stated so in an unequivocal manner. What it did by acknowledging a separate existence to each party was to consider their ·conjunction, as one political party. The words "shall be considered as" in their reference to the alliance or coalition do not mean that the parties constituting the same have ceased to exist, but that the consequences of their understanding, coalition, or alliance would be such *as* if it were one party. The adverb "as" is ·perhaps the key to the whole question here; of course in connection with the word preceding it.

No construction should be sought where the words and the ideas are plain, and their meaning distinct and definite. This is the sense of the jurisprudence which I have just quoted.

I do not wish to avoid entering into a discussion as to how the term should be construed in the English language.

In *Wason* v. *Rowe,* 16 Vt. 525, 528, it was established that the words "considered as" did not involve an undertaking or guarantee that the animal sold was sound, thus establishing the difference between the consideration of a fact and the reality of that same fact.

The literal application of the legal precept in the present

case is completely opposed to the theory of the merging of the parties into one.

If we thought that the words and phrases of the law were dubious, we would have to have recourse, for their construction, to the method prescribed by section 16 of our Civil Code.

"Sec. 16.—When the words of a law are dubious, their meaning should be sought by examining and comparing the obscure expressions with other related words and sentences in an orderly manner, in order to ascertain their true meaning."

We have submitted before phrases and words of the proviso in section 42, which when relating them to each other make it impossible to construe the language in the sense of the creation of one party as the result of the coalition or alliance of the other two. The mention of them always as *the parties,* the keeping of their individual insignia within the temporary and general coalition or alliance, and the use of the expression "considered as", dissipate any doubt.

But examining the first part of the legal provision we find that mention is made of such parties as at the previous election went to the polls as an alliance, that is, as distinct entities that in the last election period united their efforts and their strength; and authority is granted them to register in the next election a general name with an insigne containing the insignia of the allies, etc.

If the law had meant the disappearance of the alliances or coalitions, and that the former allies should not keep their own personality, it could have availed itself of a great many forms of expression of such purpose. But far from it, it granted authority to the parties in the manner set forth in section 42.

Another rule of construction is prescribed by section 18 of the Civil Code, thus:

"Sec. 18.—The most effectual and universal manner of discovering the true meaning of a law, when its expressions are dubious, is by considering the reason and spirit thereof, or the cause or motives which induced its enactment."

Above all, it is proper to state that the system is applicable when the expressions of the law are dubious; and this shows the respect attached to the literal construction when the law is plain.

As regards the reason and the spirit of the law, sufficient has been said in the opinion of Mr. Justice Aldrey, in which I concur.

We have been cited to authorities upholding the legal doctrine which establishes that if a statute is susceptible of two constructions, one of them compatible with the guaranties and limitations of the Constitution, and the other incompatible therewith, it is the duty of the court to follow the former.

Really, this doctrine is nothing more than a modality of the principle which holds that, in case of ambiguity, that construction must be adopted which will effectuate the purpose of the statute. In *Ex parte Dones,* 10 P.R.R. 170, 174, this Court said:

"According to all rules of construction. courts are required so to interpret statutes as to give effect to every part thereof."

Confining ourselves to the point at issue, there is no doubt that where construction must be resorted to, a standard must be followed leading to the constitutionality of the law, wherever possible. And it can not be questioned that the law can not, administratively, dissolve a political party, and still less convert into a unitary or single political organization the alliance or coalition of various parties which do not desire to become essentially one, but to work together temporarily and for definite purposes, preserving intact their respective identities and personalities.

It has been said that if a law changes the legal effect of a contract it impairs it in the sense of the constitutional guaranty.

In the case of two or more parties which have formed an alliance or coalition but which did not merge into one, there exist, of course, the collective or legal entities, which are the

parties, expressing their will or consent for a licit purpose (alliance or coalition) and for a consideration also licit (the interest of the parties thereto to make their political creeds triumphant). A contract exists, since the indispensable requisites to that effect concur. And so long as such parties do not overstep or place themselves outside the law, the life and development of that agreement is dependent upon their will. No law subsequent to such agreement can alter or modify in any way its legal effect, still less its nature and intimate essence, without violating the constitutional precept which exists as the highest safeguard of individual liberty in the matter of agreements.

From the facts which have been shown here it can be definitely stated that in making the alliance those two parties did not intend to lose their identity; on the contrary, they showed by the stipulations of their agreement and by subsequent facts, their determination to preserve their personality and individuality, notwithstanding the agreement, always limited by that determination to subsist. To uphold a different construction would be equivalent to stating that the electoral law could operate to destroy that determination and those aspirations so well defined and maintained in the agreement itself. And it would also be equivalent to declaring that those who make the agreement by their own free will and through their convention as an expression of such free will would destroy that agreement by a law passed by themselves, which would be a conduct really absurd.

Once the agreement has been rescinded and the alliance or coalition dissolved, the insignia or emblems, which were so carefully preserved when the alliance was formed and which are still preserved under the electoral laws, are the property of the different parties to which, if we observe the law in accordance with the evidence introduced, they never ceased to belong. Let us consider the above facts such as they appear from the record.

I can not agree with the theory that the special nature

and the ends and purposes of the alliance or coalition in question fix the period of its duration at four years or any other term. Nothing appears from the agreement limiting its duration: neither the will of the parties which has not expressed itself in that sense, nor the purpose of the agreement in any way limiting the existence of the alliance, as if, for instance, the latter had been made for the election in a definite year.

The use of the name "Puerto Rican Alliance" in several certificates of nomination subscribed by important members of the Union Party of Puerto Rico or of the Alliance Party can not lead me to believe that the merger or consolidation of the parties was a fact. As shown by the record in this case, in making the agreement the conventions of the two contracting political parties carefully kept their individual and separate existence as parties; and it does not appear that in any subsequent convention they had delegated their sovereignty on Messrs. Barceló or Córdova Dávila to carry out, by means of certificates or in any other way, a consolidation, unification, or merger, which they did not wish explicitly to effect when making the agreement. Apart from the fact that in August, 1928, a convention of the Puerto Rican Alliance resolved to go to the polls under a single ticket and one insigne, but as the "Puerto Rican Alliance of the Union Party of Puerto Rico and the Puerto Rican Republican Party," and likewise to use the abbreviated name of "Puerto Rican Alliance,"—and this clearly and easily explains the use of that name in certificates issued by leaders such as those above mentioned—it can be seen how, after section 42 of the Election Law as amended went into effect, that conjunction or alliance continues preserving, and preserving for the election, and as part of the alliance the names "Union of Puerto Rico" and "Puerto Rican Republican" which appear in the resolution of the Convention of 1928 and which are printed on the ballot as part of the title of the Alliance. When voting that ticket the electors see therein those two names and

not that of a new party; and it logically follows that when Unionist electors register their votes they see on the ballot the name "Union of Puerto Rico," and similarly as to the Puerto Rican Republicans. I can not believe that the elector., when voting for candidates for certain offices, have gone further than the nomination.